UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CRIMINAL ACTION NO. 08-26-DLB

SHARON K. TACKETT,                                                                              PLAINTIFF,

V.                          **MAGISTRATE JUDGE'S REPORT
                              AND RECOMMENDATION**

MICHAEL J. ASTRUE,                                                                              DEFENDANT.
Commissioner of Social Security

## I. INTRODUCTION

Plaintiff, Sharon K. Tackett, brings this action under 42 U.S.C. § 405(g) to challenge the Defendant Commissioner's final decision denying her application for Supplemental Security Income ["SSI"]. [R. 2]. This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [R. 11]. Now ripe for decision on the parties' motions for summary judgment, and for the reasons set forth herein, it is recommended that Plaintiff's Motion for Summary Judgment [R. 9] be denied, Defendant Commissioner's Motion for Summary Judgment [R. 10] be granted, and Judgment be entered affirming the final decision of the Commissioner.

## II. FACTS & PROCEDURAL HISTORY

The Plaintiff was born in 1964 and was 39 years old on the alleged onset date of her disability, which was January 15, 2003. [Tr. 53]. She received her GED in 1984, and has no

1

additional education or specialized training. [Tr. at 66-67]. The Plaintiff is unmarried and currently resides in a two-bedroom trailer with her eight-year old son. [Tr. at 53-54]. She has prior relevant work experience as a care giver and certified nurses assistant. [Tr. at 62, 69]. In this action, the Plaintiff alleges disability due to the following impairments: spurs on the spine, back pain, deteriorating disc disease, heart problems, diabetes, high blood pressure, sleep apnea, as well as nervousness and depression. [Tr. at 91, 461-64].

In September of 2004, the Plaintiff filed her application for benefits.[1] [Tr. 53]. Her claims were denied initially and on reconsideration. [Tr. 39, 40]. Following the denial, she properly requested a hearing in front of an Administrative Law Judge ["ALJ"]. On October 19, 2006, a hearing was held in Prestonsburg, Kentucky, before ALJ James D. Kemper, Jr. The Plaintiff was present at the hearing and represented by counsel, the Hon. Eric C. Conn. During the hearing, a transcript of which was placed in the administrative record, the ALJ sought testimony from the Plaintiff, as well as Leah Salyers, a vocational expert. [Tr. 439].

The ALJ ruled against the Plaintiff in a written decision dated November 6, 2006. [R. 15-27]. The ALJ found that the Plaintiff was severely impaired due to chronic low back pain and obesity. [Tr. 17-18]. The ALJ found that the Plaintiff's heart problems, diabetes, high blood pressure, and sleep apnea, however, were "non-severe" impairments. [Tr. 19]. Regarding the Plaintiff's allegations of nervousness and depression, the ALJ acknowledged that the Mountain Comprehensive Care Center's ("MCCC") records confirmed that she complained of feelings of helplessness, diminished sleep, fatigue, as well as "pulling her eyebrows out" when nervous. [Id.

---

[1] The Plaintiff has applied for social security benefits on two previous occasions. Her first application was filed on September 12, 1983, and was denied on April 27, 1984. Her second application was filed on August 12, 1992, and was denied on December 2, 1992. [Tr. 15, 68-69].

at 320-322]. The MCCC records further indicate that the Plaintiff was diagnosed with "anxiety disorder." [Tr. 325, 386]. Nonetheless, the ALJ found there was insufficient evidence to support the Plaintiff's claim of severe mental impairment:

> [A]lthough the claimant has been found to have a depressed mood and affect, her demeanor has been described as friendly and cooperative and she has exhibited normal psychomotor activity with clear, relevant, and coherent speech and thought patterns with no discernable memory or concentration deficits. There appear to be few, if any notations in the other evidence showing the claimant to have complained of prolonged or intense problems of this nature and there do not appear to be observations noted by any other treating or examining physician. ...Thus, absent more, the undersigned finds no evidence to support that the claimant has any severe mental or psychological impairment.

[Tr. 19].

The ALJ found that the analysis set forth in 20 C.F.R. § 404.1520a for determining the severity of mental impairments provided additional support for his conclusion. For instance, the ALJ observed that the only limitation the Plaintiff alleged in her "activities of daily living" as a result of depression was that she stayed tired all the time. [Tr. 20]. The ALJ rated the degree of limitation in this area as "mild." [Id.] With respect to "social functioning," the ALJ found that the medical evidence did not indicate any limitation in the Plaintiff's ability to relate and interact with others. [Id.]. Again, the ALJ rated the degree of limitation as "mild." [Id.]. Regarding "concentration, persistence, and pace," the ALJ observed that the Plaintiff had not alleged any problems sustaining attention and there was no record of subjective complaints or clinical evidence of such problems. [Id.]. To the contrary, the ALJ observed that the clinical records showed the Plaintiff to be alert, attentive, and focused with no psychomotor or memory deficits. [Id.]. Based on the Plaintiff's allegations of routine fatigue, however, the ALJ rated the degree of limitation as "mild." [Id.].

3

Finally, regarding "episodes of decompensation" in work or work-type settings, the ALJ found that the Plaintiff had produced no evidence. [Id.].

After conducting step two of the five-step sequential evaluation process, the ALJ found that the Plaintiff's medical impairments "were not severe enough, either singly or in combination including those deemed non-severe, to meet or medically equal any of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." [Tr. 21]. The ALJ also made an express determination as to the Plaintiff's residual functional capacity:

> After careful consideration of the entire record, as assessed by the state agency medical consultants the undersigned finds that the claimant has the residual functional capacity limiting her to medium work, as defined in the regulations (20 C.F.R. § 404.1567). She can never climb ladders ropes, or scaffolds, only occasionally climb ramps and stairs, stoop, kneel, and crouch. She must avoid extreme cold and heat, vibrations, and hazards.

[Tr. 22]. Based on the Plaintiff's residual functional capacity, the ALJ found that she was unable to return to her past relevant work as a care giver and certified nurses assistant, which was classified by the vocational expert as "medium to heavy in exertion and ...semi-skilled in nature." [Tr. 25]. The ALJ found that the Plaintiff was capable, however, of engaging in work that exists in similar numbers in the national economy. [Tr. 26]. In a lengthy finding, the ALJ determined that the Plaintiff had not been fully credible with respect to the intensity, persistence, and limiting effect of her symptoms, a finding she does not challenge in this appeal. [Tr. 23-24].

Following the adverse decision of the ALJ, the Plaintiff properly exhausted her administrative remedies by appealing to the Social Security Appeals Council, which denied her request for review. [Tr. 5-7]. On February 8, 2008, the Plaintiff initiated the present action by filing a complaint with the United States District Court for the Eastern District of Kentucky. [R. 2]. This

matter is currently before the Court on the parties' motions for summary judgment. In the Plaintiff's Motion for Summary Judgment, she alleges that the ALJ improperly acted as his own medical expert regarding her MCCC records by finding that she does not have a severe mental impairment. [R.9 at 1]. The Defendant Commissioner, through counsel, asserts that the ALJ did not act as his own medical expert and that substantial evidence supports his decision that the Plaintiff has the residual capacity to perform a wide range of medium work. [R. 10 at 4, 6-10].

### III . STANDARD OF REVIEW

A reviewing court must uphold the findings of the ALJ if they are supported by substantial evidence. 42 U.S.C. § 405(g)(2006); see also, Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981). The Sixth Circuit has held that "substantial evidence exists when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004) (internal quotations and citations omitted). The scope of judicial review is limited to the record itself, and the reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1993).

The limited nature of substantial evidence review is intended to prevent the reviewing court from substituting its judgment for that of the ALJ. Indeed, so long as substantial evidence exists, the reviewing court should affirm the ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion." Longworth v. Comm'r Soc. Sec. Admin., 402 F.3d 591, 595 (6th Cir. 2005) (internal quotations and citations omitted). Sixth Circuit precedent suggests that a finding of "no substantial evidence," and potential reversal of the agency decision, would be appropriate in situations where the ALJ: ignores uncontested, compelling

evidence for one side; makes no express findings on witness credibility; or makes a ruling based on facts with "little if any evidentiary value." Noe v. Weinberger, 512 F.2d 588 (6th Cir. 1975); see also, Glass v. Sec'y of Health, Educ. & Welfare, 517 F.2d 224 (6th Cir. 1975). Otherwise, if there is substantial evidence to support the ALJ's decision, "it must be affirmed even if the reviewing court would decide the matter differently." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994).

## IV. ANALYSIS

To determine whether a claimant is "disabled" within the meaning of the Social Security Act, an ALJ undertakes a five-step sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520, 416.920. Step one examines the work activity of the claimant to determine whether she is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4). In step two, the ALJ determines whether the claimant has a medically determinable "severe impairment" or combination of impairments that qualify as severe. Id. Step three examines whether the claimant's impairments meet the criteria set forth in the regulations to categorize an individual as "disabled." Id. The fourth step determines whether the claimant retains any "residual functional capacity" and whether the claimant can return to her past relevant work. Id. Finally, if the claimant is unable to return to any past relevant work, it must be determined whether she has the residual functional capacity to do any other work. Id. The Sixth Circuit Court of Appeals has summarized the burdens of proof involved in this process as follows:

> Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry...the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step

6

four) and vocational profile.

Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003).

A severe impairment is one that "significantly limit[s] [the claimant's] physical or mental ability to do basic work activities." Heston v. Commissioner of Social Sec., 245 F.3d 528, 534 (6th Cir. 2001); 20 C.F.R. § 404.1521(a). With respect to determining the severity of mental impairments, the regulations set forth a special technique in which the ALJ rates the claimant's degree of limitation in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation in work or work-like settings. 20 C.F.R. § 404.1520a; § 404.1520a(c)(3); 20 C.F.R. Part 404, Supart P, Appendix 1, § 12.00 (1989). The ALJ uses the following five-point scale to rate the degree of limitation: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a.

The Plaintiff's sole claim of error on appeal is that the ALJ improperly acted as his own medical expert by finding that she does not have a severe mental impairment. [R.9 at 1]. Specifically, she claims that the ALJ "played doctor" when he "relied on his own expertise regarding the Plaintiff's MCCC records." [R. 9 at 3]. In support of her argument, she cites three cases from the Seventh Circuit: Back v. Barnhart, 63 Fed.Appx. 254, 259 (7th Cir. 2003)(unpublished); Dixon v. Massanari, 270 F.3d 1171 (7th Cir. 2001); and Green v. Apfel, 204 F.3d 780 (7th Cir. 2000).

The Seventh Circuit Court of Appeals has held that ALJs may not "play doctor" by substituting their opinion for that of a medical professional. See Clifford v. Apfel, 227 F.3d 863 (7th Cir. 2001). Examples of ALJs impermissibly "playing doctor" are when they "either reject a doctor's medical conclusion without other evidence or when they draw medical conclusions themselves about a claimant without relying on medical evidence." Back at 259. Green v. Apfel, 204 F.3d 780 (7th

7

Cir. 2000) is illustrative.[2] In Green, the ALJ denied the claimant's application for social security benefits, finding that the claimant's "complaints of debilitating pain and limitations [were] disproportionate to the objective medical findings in the record." Id. at 781. The ALJ relied on his own analysis of the claimant's medical records in making this determination. For instance, with respect to the claimant's allegations of chest pain, the ALJ noted that "clinic records ... show reasonably good pain control through the use of medications such as Tylenol ES and Motrin," as well as the lack of "any clinical evidence of angina or arthritic problems which would account for the pain." Id. Regarding the claimant's allegations of shortness of breath, the ALJ noted that his "pulmonary function studies and arterial blood gas studies were essentially normal by November, 1993." Id. The Court reversed the ALJ's denial of benefits and remanded with instructions that a physician examine the claimant or his records to determine whether a disability existed. Id. at 782. The Court held that the ALJ improperly "played doctor" and failed to build a logical bridge from the evidence to his conclusion. Id. at 781.

In the present case, the Court finds that the ALJ did not act as his own medical expert in finding that the Plaintiff does not have a severe mental impairment. Unlike Green, this is not a case in which the ALJ substituted his opinion for that of a doctor or made an uninformed medical determination. To the contrary, the ALJ simply reviewed the record and found there was insufficient evidence to support a finding of severe mental impairment. For instance, the ALJ noted that there were few, if any, notations in the evidence showing that the Plaintiff complained of prolonged or intense problems of the type she alleged. [Tr. 19]. The ALJ also noted that the Plaintiff failed to

---

[2] Although the Plaintiff cites three cases in support of her argument, Green is the only case which held that an ALJ improperly acted as his own medical expert.

establish any significant limitation in her "daily living activities," "social functioning," "concentration, persistence, or pace," and provided no evidence of "episodes of decompensation." [Tr. 20]. Finally, the ALJ found not only the medical evidence to be lacking, but that the Plaintiff was not fully credible with respect to the intensity, persistence, and limiting effect of her symptoms. [Tr. 23-24].

As the Sixth Circuit Court of Appeals has noted, "[t]he claimant bears the burden of proving the existence and severity of limitations caused by her impairments..." Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003). In the present case, the ALJ determined that the Plaintiff failed to prove that her alleged impairment was severe. The ALJ did not "play doctor," but rather made a determination that was particularly within his expertise and duty to make. See Bradley v. Secretary of Health and Human Services, 862 F.2d 1224, 1227-28 (6th Cir. 1998) (noting that it is the role of the ALJ to weigh all the evidence and resolve conflicts in the testimony); Clonch v. Southern Ohio Coal Co., 2006 WL 3409880, *5 (6th Cir., Nov. 27, 2006) (unpublished) ("as the finder-of-fact, it is the role of the ALJ to weigh the evidence and determine whether the opinion of medical experts are well-reasoned"). Having reviewed the record, the Court finds that substantial evidence supports the ALJ's conclusion that the Plaintiff does not suffer from a severe mental impairment. Accordingly, the opinion of the ALJ must be affirmed.

## V. CONCLUSION

For the foregoing reasons, it is recommended that the Plaintiff's Motion for Summary Judgment [R. 9] be denied, the Defendant Commissioner's Motion for Summary Judgment [R. 10] be granted, and that Judgment be entered affirming the final decision of the Commissioner.

Specific objections to this Report and Recommendation must be filed within ten days from

9

the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within ten days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Signed September 11, 2008.

**Signed By:**
*Edward B. Atkins*   *EBA*
**United States Magistrate Judge**